# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>6261 Claus Road,<br>Riverbank, California | ) ) ) ) ) ) Case No. 2:21-sw-0931 DB |

**FILED**
Dec 11, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A.

located in the __EASTERN__ District of __CALIFORNIA__, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit of DEA Special Agent Jared Simmons

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/Jared Simmons
*Applicant's signature*

Jared Simmons, DEA Special Agent
*Printed name and title*

Sworn to before me telephonically.

Date: December 11, 2021

City and state: Sacramento, CA

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

# AFFIDAVIT OF DEA SPECIAL AGENT JARED SIMMONS

I, Jared Simmons, being duly sworn, hereby depose and state:

## PURPOSE

1. This Affidavit is made in support of a search warrant for:

    a. 6261 Claus Road, Riverbank, California ("Target Residence"), as more fully described in Attachment A.

    I believe there is probable cause to believe that the residence described in Attachment A contains evidence, fruits, proceeds, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution, manufacturing, and possession with intent to distribute controlled substances) and 21 U.S.C. § 846 and 841(a)(1) (conspiracy to distribute controlled substances). The evidence, fruits, and instrumentalities to be searched for and seized are more fully described in Attachment B.

## AGENT BACKGROUND

2. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been a DEA Special Agent since October 2020.

3. During the course of my employment as an DEA Special Agent, I have participated in several drug trafficking investigations. I have also participated in numerous investigations involving the use of federal and state search warrants to collect evidence, including controlled substances, the seizure of narcotics-related records, and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances and weapons. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources including physical and electronic surveillance, various types of infiltration (including undercover agents, informants, and cooperating sources), pen register and trap and trace devices, GPS and telephone tracking devices, trash covers, mail covers, pole cameras, stationary video recording vehicles, audio and audio/video recording devices.

4. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar

with the methods used by drug trafficking organizations to smuggle and safeguard controlled substances and weapons, to distribute, manufacture, and transport controlled substances, and to collect and launder related proceeds.

5. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

6. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested search warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

7. This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

## STATEMENT OF PROBABLE CAUSE

8. On December 2, 2021, a federal grand jury returned a nine-count indictment charging Oscar Fidel Ayon ("Nando"), Oscar Ayon Lopez, Oliva Reyes, and Travis Jordan Michael with conspiracy to distribute and possession with intent to distribute methamphetamine and fentanyl. 2:21-CR-00232-KJM (filed under seal). This search warrant application seeks authorization to search the residence of Reyes to effectuate a pending arrest warrant and search for evidence of her criminal activity.

9. Nando is a Mexico-based drug trafficker that advertises drugs for sale via Snapchat. In October 2020, a Spanish-speaking undercover law enforcement officer (hereafter UC) started communicating directly with Nando. As set out below, when the UC ordered drugs from Nando, Nando caused US-based co-conspirators to deliver the drugs to the UC.

**Olivia Reyes indicted for drug trafficking offenses.**

10. Olivia Reyes was charged by indictment on December 2, 2021, with conspiracy to distribute and possession with intent to distribute methamphetamine and fentanyl, in violation of 21 U.S.C. § 846; and distribution of methamphetamine and fentanyl, in violation of 21 U.S.C. § 841(a)(1). 2:21-CR-00232-KJM. There is a pending arrest warrant for Reyes.

11. On December 11, 2020, Reyes sold 958 grams of methamphetamine to the UC. Prior to the December 11, 2020 drug transaction, the UC ordered two pounds of methamphetamine from Nando. Nando provided the UC with Reyes's phone number and told the UC that his "Cousin" would deliver the drugs.

12. On December 11, 2020, the UC met with Reyes in Riverbank, California. Reyes gave the UC two pounds of methamphetamine in exchange for $4,400. During the drug transaction, Reyes identified herself as "Olivia" to the UC.

13. On March 16, 2021, the UC met with Reyes at a parking lot in Riverbank, California. Reyes gave the UC 1,000 counterfeit M-30 pills containing fentanyl in exchange for $3,000. Reyes drove to the drug transaction in a white Toyota Camry with paper license plates. According to the DMV, the vehicles was registered to Ricard Lizarraga Eceberre or Olivia Quintero Reyes at 2492 Sierra Street, Apartment 106, Riverbank, California.

    a. M-30 is the marking applied to legitimately produced oxycodone. Based on my training and experience, I know that it is common for drug traffickers to manufacture counterfeit M-30 pills using fentanyl and attempt to mark the pills so that they appear similar to legitimately produced oxycodone pills.

**Reyes lives at the Target Residence**

14. According to utility records, Nathan Grimmett is the subscriber for utilities at the Target Residence. Grimmett's listed mailing address for the utilities is 6624 River Mesa Drive. I believe that Grimmett is the owner of the property and rents the property to Olivia Reyes.

15. On March 16, 2021, prior to the drug transaction described above, law enforcement conducted surveillance at the Target Residence. Surveillance observed Reyes exit from the Target Residence and drive away in the white Toyota Camry that was later used to deliver counterfeit M-30 pills.

16. On November 30, 2021, law enforcement conducted surveillance at the Target Residence. Surveillance observed the white Toyota Camry parked in the garage. This is the same vehicle used by Reyes to deliver counterfeit M-30 pills on March 16, 2021. During surveillance, law enforce also observed Ricardo Eceberre walking around in the garage. Eceberre is believed to be Reyes's spouse.

17. Enforcement obtain a geolocation search warrant for Reyes's cellular telephone. Geolocation for the cellular telephone was consistent with Reyes spending the night and residing at the Target Residence.

18. Reyes lives at the Target Residence with her husband. I am not aware of any other occupants of the Target Residence. When executing a search warrant for a premises inhabited by multiple occupants, only some of whom are targets of the investigation it is my practice to conduct a more cursory search of areas that appear to be under the sole control of non-targets of the investigation. We focus our search on the areas under the control of the target and common areas. If there is no reason to believe an area of the target premises may contain such evidence or contraband, we conduct a protective sweep for officer safety but do not search the area.

## TRAINING AND EXPERIENCE

19. Based on my training and experience, and consultations with other federal, state and local law enforcement personnel, I believe the following to be true:

    a. Persons involved in the distribution of controlled substances often maintain at their residences, outbuildings, secondary residences, businesses, and vehicles, quantities of controlled substances, as well as paraphernalia for manufacturing, use, packaging, and distribution of controlled substances. Drug traffickers also maintain records relating to their trafficking activities in these same places. It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their control. It is my training and experience, that in the case of drug dealers, evidence is

likely to be found where the dealers live. *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time. *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). These records include personal calendars, address/telephone books, and papers reflecting the names, addresses, pager, telephone, and fax numbers relating to their drug trafficking associates. These records can be in written form. Drug traffickers also keep stored messages and telephone numbers relating to their trafficking activities within electronic communication devices. Further, drug traffickers often keep photographs and audio/video recordings depicting themselves and their associates, as well as their assets and controlled substances. They may also keep electronic equipment used for counter surveillance including scanners, cameras, monitors, and anti-bugging devices.

b. Premises and vehicles used by individuals involved in drug dealing usually contain articles of personal property showing the identity of persons occupying, possessing, residing in, owning, frequenting or controlling the premise or property.

c. Persons involved in the distribution of controlled substances often maintain records and ledgers listing their trafficking activities in these same places. These records are kept to keep track of the ordering, purchasing, storage, distribution and transportation of controlled substances. After drugs are sold, documentary records and ledgers often remain for long periods of time to memorialize past transactions, track the status of accounts receivable and accounts payable, and to record the names and telephone numbers of suppliers, customers and co-conspirators. These records are often maintained not only on paper, but also as electronic or digital data in the form of computer hardware and software.

d. Individuals involved in drug trafficking often use telephones, cellular telephones, electronic pagers, beepers, e-mail devices, text messaging, and voice mail and/or answering machines to conduct their business. Individuals involved in drug trafficking must often rely on others to obtain drugs and to help obtain, market, distribute, and/or protect drugs. To achieve some of the aforementioned objectives, I am aware that drug distributors will often, among other methods, have a courier

transport drugs or drug proceeds or ship controlled substances/drug proceeds through the mail or by common carrier. Evidence related to the identities of these co-conspirators are often maintained in these locations.

e. Individuals involved in drug trafficking often maintain large amounts of U.S. currency to maintain and finance their on-going drug business. In addition, assets generated by their drug business are typically kept on-hand by drug dealers to avoid detection by authorities and/or reporting requirements. Individuals involved in drug trafficking often attempt to legitimize the source of these profits. In order to do this, they attempt to secrete, transfer and conceal the money by, among other way: (a) Placing assets in names of nominees to avoid detection, while still maintaining control of the assets (S); (b) Laundering money through what appears to be a legitimate business or businesses; (c) Hiding money in their homes, safes, or safety deposit boxes; (d) Using money to buy assets which are hard to trace by law enforcement. Records of these transactions are often found in the aforementioned locations.

f. Additionally based on my training and experience and the training and experience of other investigators, I know persons involved in narcotic trafficking acquire personal and real property with their narcotic proceeds, and maintain evidence of financial transactions related to obtaining, transferring, secreting, or the spending of large sums of money made from drug trafficking activities. These records include bank statements, passbooks, money drafts, checkbooks, tax returns, loan statements, escrow files, and wire transfer records. Persons involved in drug trafficking will often convert the currency into cashier's checks, bearer bonds, precious metals, gold, diamonds, and other jewelry in an attempt to hide large amounts of currency, and that evidence of such will be located at the described locations.

g. Individuals involved in narcotics trafficking often take, or cause to be taken, photographs of themselves, their associates, their property, and/or their drugs, and usually maintain these photographs in the aforementioned locations.

h. Individuals involved in drug trafficking often maintain weapons, firearms, and ammunition on their person, in their residences, and/or

in their vehicles in order to protect themselves and guard their drugs and drug profits, and for enforcement purposes during drug transactions. These weapons and firearms can be used, and often are used, as an instrumentality of the crime of drug possession and distribution. Therefore, I am requesting permission to seize weapons, firearms, and ammunition that may be found at the premises or in the vehicles to be searched, as indicated in the Attachment B attached to each of the locations requested.

i. Individuals involved in drug trafficking often conceal evidence of their involvement in vehicles and outbuildings in order to prevent detection and seizure by law enforcement conducting lawful search warrants at residences. Therefore I am requesting permission to search all vehicles and outbuildings located at each of the locations requested.

j. Your affiant further believes that persons involved in the distribution of drugs will store items, further described in Attachment B, which is incorporated herein by reference, and that those items are used by drug traffickers in furtherance of their drug trafficking, or are obtained by drug traffickers as a result of their drug trafficking.

k. Based on my training, experience and conversations with other experienced agents, I am familiar with the methods and practices used by individuals and organizations involved in illicit activities that generate large amounts of income. These methods include cash purchases, the purchasing of numerous monetary instruments with cash in amounts less than $10,000, the use of aliases and nominees, the use of businesses as "front" in an attempt to legitimize and conceal their activities and the use of "off-shore" banking in an attempt to break the paper trail. These and other schemes are commonly referred to as "money laundering".

l. Individuals normally maintain records of their financial activity, such as receipts for expenditures by cash and check, bank records, and other financial documents, in their personal residences. Furthermore, individuals engaged in an income-producing business keep records of the financial activities of the business for numerous reasons and often use accounts to complete financial statements and tax returns for their business and personal returns.

m. Persons engaged in illegal activities and/or money laundering frequently retain records of their transactions within their residence, place of business, rented storage units, vehicles, or other places under their control.  These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, and other records.  Records of this kind are also often stored on computer media.

n. There are many reasons why criminal offenders maintain evidence for long periods of time.  The evidence may be innocuous at first glance (e.g., financial, credit card and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, checkbooks, video recordings and photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone and pager bills, keys to safe deposit boxes, packaging materials, computer hardware and software), but have significance and relevance when considered in light of other evidence.  The criminal offender may no longer realize he/she still possesses the evidence.

o. Individuals who amass proceeds from illegal activities routinely attempt to further that conduct and/or conceal the existence and source of their funds by engaging in financial transactions with domestic and foreign institutions, and others, through all manner of financial instruments, including cash, cashier's checks, money orders, green dot cards, prepaid credit cards, traveler's checks, wire transfers, etc.  Records of such instruments are routinely maintained at the individual's residence or place of business.

p. The terms "evidence" and "documents" as used above include all of the items of evidence more fully described in Attachment B in whatever form and by whatever means such evidence or documents, their drafts or their modifications may have been crated or stored.

### REQUEST TO SEAL

20. This Affidavit contains information regarding potential targets, which if unsealed may jeopardize the very information sought to be gained by this search warrant. In light of the on-going nature of the investigation, and the likelihood that notice to above-identified individuals may cause them to destroy evidence, flee from prosecution, and notify confederates, your Affiant

requests that this Affidavit and the resulting Search Warrant be sealed on the Court's docketing system, with the exception of copies utilized by law enforcement officers participating in the investigation and a copy of the Search Warrant and an inventory of any items seized that will be left at the location of the execution of the Search Warrant.

## **CONCLUSION**

21. I hereby request that a search warrant be issued for the Target Residence described in Attachment A for the items set forth in Attachment B based upon the aforementioned facts.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.


 /s/Jared Simmons
JARED SIMMONS
DEA Special Agent



Sworn and Subscribed to me
on December 11, 2021,

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

Approved as to form:
_____
Justin L. Lee
Assistant United States Attorney

# ATTACHMENT A

## *Location to be Searched*

## 6261 Claus Road, Riverbank, California



6261 Claus Road., Riverbank, California is a single-family residence with a shared wall connecting the residence to 6263 Claus Rd. The driveway isn't covered by a fence or gate. The residence has a tan exterior. With a grey roof. The numbers "6261" are vertically affixed to the side of the 2-car garage. The left side of the house has a brown fence that leads to the backyard. The residence has a white front door. The residence sits on the west side of Claus Road, between Patterson Road and California Street. The front door faces east.

1. ANY AND ALL attachments, to include attics, basements, garages, safes, carports, outbuildings, trailers, appurtenances thereto, and all other areas within the curtilage and associated with the residence.

2. A white Toyota Camry bearing CA license plate BK19Z02.

3. A 2011 Ford bearing CA license plate 6SPK460.

4. A 2003 Ford bearing CA license plate 7E88763.

5. A 2004 Toyota CA license plate 7V66940.

## ATTACHMENT B

### *Items to be Seized*

All evidence constituting evidence, fruits, proceeds, and instrumentalities of violation of 21 U.S.C. § 841(a)(1) (distribution of a controlled substance) and 21 U.S.C. § 846 (conspiracy to distribute controlled substances):

1. Any controlled substances, illegal drugs or drug paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and other containers;

2. United States currency and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking;

3. Money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed; electronic storage devices, computer disks, computer printouts, computer codes and computer programs in addition to computer hard disks, computer screens, computer keyboards, directory disks, all computer components which operate computers and which would reveal the receipt of proceeds from drug distribution and the transfer, investment, control and disposition of those proceeds;

4. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

5. Cellular telephones, telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which evidence participation in a conspiracy to distribute controlled substances;

6. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, photographs, audio and videos recordings, personal notes and

other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, money orders, prepaid credit cards, green dot cards, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Handguns, shotguns, rifles, ammunition and other firearms possessed in relation to drug trafficking or discovered in the possession of a prohibited person;

11. Devices commonly used to conduct counter-surveillance against law enforcement including, but not limited to, scanners, police radios, surveillance cameras, recordings of surveillance footage, monitors, anti-bugging devices, and devices used to detect the presence of wiretaps, recording devices, transmitters, and/or receipts or literature describing the same;

12. Personal property tending to show the existence and/or location of other stored narcotics including, but not limited to, storage locker receipts, records, and maps, safety deposit keys and corresponding; and

13. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>6261 Claus Road,<br>Riverbank, California | )<br>)<br>)  Case No.  2:21-sw-0931 DB<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     EASTERN     District of     CALIFORNIA
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     December 23, 2021
                                                                                                                        *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
 any duty magistrate judge                                        .
                    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30).*
                                                                       ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: December 11, 2021 @ 10:52 a.m.

City and state:     Sacramento, CA

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                                            *Executing officer's signature*

                                                                            *Printed name and title*

Subscribed, sworn to, and returned before me this date.                                   
                                                      *Signature of Judge*                       *Date*